IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § Plaintiff, § § v. § § JASON NEIL HUGHES, § INDIVIDUALLY AND D/B/A § CHANGEPOINT COUNSELING § SERVICES, PLLC; AIMEE § MONETTE HUGHES; AND § ROBERT CLAYTON § STRAYHAN § § Defendants. § | Case No. 5:19-cv-00092 |

**COMPLAINT FOR PERMANENT INJUNCTION AND
OTHER EQUITABLE RELIEF**

The United States of America (hereinafter "United States") by and through the undersigned United States Attorney, respectfully files this complaint against Jason Neil Hughes, individually and d/b/a ChangePoint Counseling Services, PLLC; Aimee Monette Hughes; and Robert Clayton Strayhan.

**INTRODUCTION**

1.  The United States brings this action seeking preliminary and permanent injunctive relief against Jason Neil Hughes, individually and

1

d/b/a ChangePoint Counseling Services, PLLC, Aimee Monette Hughes, and Robert Clayton Strayhan (collectively, "Defendants") under 18 U.S.C. § 1345 to enjoin Defendants from perpetrating an ongoing scheme to defraud a health care benefit program in connection with federal health care offenses, specifically violations of 18 U.S.C. § 1347 (Health Care Fraud) and 18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud).  The facts and allegations set forth herein have been developed through investigation, as explained in the affidavit of Joseph Valero, Special Agent with the Federal Bureau of Investigation (FBI), which has been attached hereto as Exhibit A.

    2.    As set forth more fully below, the United States alleges in this action that Defendants and conspirators conspired and agreed to defraud health care benefit programs and obtain, by means of false or fraudulent pretenses, representations, or promises, money or property owned by, or under the custody or control of, a health care benefit program.

    3.    Specifically, Defendants submitted claims to Blue Cross Blue Shield of Texas and other private insurance providers for health care services allegedly provided by a physician, when in truth and in fact, the services were not provided by a physician.  As a result of this fraud scheme, Defendants received at least $476,496.34 in criminal proceeds.

4. Injunctive relief under 18 U.S.C. § 1345 is necessary and appropriate because Defendants will continue to engage in this fraudulent conduct unless the Court enjoins the conduct and the disposition of the criminal proceeds.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345 and under the Court's general equitable jurisdiction.

6. This Court has personal jurisdiction over Defendants Jason Neil Hughes, individually and d/b/a ChangePoint Counseling Services, PLLC, Aimee Monette Hughes, and Robert Clayton Strayhan because they knowingly and willfully conspired and agreed to execute, or attempted to execute, a scheme or artifice to defraud any health care benefit program, or obtained, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in in this district.  Moreover, Defendant Robert Clayton Strayhan resided within this jurisdiction when he violated 18 U.S.C. §§ 1347 and 1349.

7. This Court has personal jurisdiction over defendant ChangePoint Counseling Services, PLLC, because it did business with people in this district during the acts that give rise to the cause of action.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

9. Plaintiff is the United States of America.

10. JASON NEIL HUGHES ("Jason Hughes") lives at 105 Parkside Road, Forney, Texas 75126 ("the Hughes Residence") and is a Licensed Professional Counselor ("LPC"). Jason Hughes is the CEO and owner of ChangePoint Counseling Service, PLLC, a therapy services practice in Forney, Texas. On February 28, 2013, a Certificate of Formation for ChangePoint Counseling Services, PLLC, was filed with the Secretary of State of Texas. The filing identifies Jason Neil Hughes as the filing agent with a listed address of 11803 Classic Lane, Suite A, Forney, Texas 75126.

11. CHANGEPOINT COUNSELING SERVICES, PLLC ("ChangePoint") is a professional limited liability company organized and

existing under the law of Texas, located at 11803 Classic Lane, Suite A, Forney, Texas 75126.  Jason Hughes is the owner of ChangePoint.

12. AIMEE MONETTE HUGHES ("Aimee Hughes"), is the wife of Jason Hughes and lives at the Hughes Residence.  Aimee Hughes is a Registered Nurse ("RN") and aided and abetted Jason Hughes in committing the federal health care offenses made the subject of the complaint.  Aimee Hughes is an RN on staff at ChangePoint.

13. ROBERT CLAYTON STRAYHAN, M.D. ("Strayhan") is a physician licensed by the Texas Medical Board.  His primary practice is in the area of psychiatry.  Strayhan owns Serendipity Wellness Center ("Serendipity Wellness") at 1732 Galleria Oak, Texarkana, Texas 75503.  Strayhan aided and abetted Jason Hughes in committing the federal health care offenses made the subject of the complaint.  Strayhan lives at 4501 Summerhill Road, Apartment 177, Texarkana, Texas 75503.

## STATUTORY FRAMEWORK

14. Section 1345 of Title 18 provides the United States may commence an action seeking an injunction to prevent the commission of "a Federal health care offense." *See* 18 U.S.C. § 1345(a)(1)(C).  Violations of 18 U.S.C. § 1347 (Health Care Fraud) are "Federal health care offenses." *See* 18

U.S.C. § 24(a)(1). Moreover, a conspiracy to commit violations of 18 U.S.C. § 1347 is also a "Federal health care offense." *See* 18 U.S.C. §§ 24(a), 371, and 1349.

15. Once the United States commences an action under Section 1345, the statute directs the Court to "proceed as soon as practicable to the hearing and determination of such an action" and states the Court "may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345(b). Injunctive relief under a federal statute, such as 18 U.S.C. § 1345, does not require the showing of irreparable harm that is otherwise a usual requirement for a preliminary injunction to issue under common law. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975).

## OVERVIEW OF THE INVESTIGATION

16. On February 28, 2013, a Certificate of Formation for ChangePoint Counseling Services, PLLC, was filed with the Secretary of State of Texas. The filing identifies Jason Neil Hughes as the filing agent with a listed address of 11803 Classic Lane, Suite A, Forney, Texas 75126.

6

17.     According to Chase Bank records, on March 4, 2013, Jason Hughes opened Chase checking account XXXXX1183 in the name of ChangePoint Counseling Service, PLLC.  The mailing address listed for ChangePoint was 2017 Bishop Drive, Forney, Texas 75126.  As of May 31, 2019, the account balance was $34,533.30.

18.     According to Chase Bank records, on August 5, 2008, Jason and Aimee Hughes opened Chase checking account XXXXX7286 in the name of Jason N. Hughes or Aimee Hughes (JTWROS).  The mailing address listed for the account was 106 Painted Trl, Forney, Texas 75126.  As of May 31, 2019, the account balance was $37,877.57.

19.     According to Chase Bank records, on May 11, 2010, Jason and Aimee Hughes opened Chase savings account XXXXXX8138 in the name of Jason N. Hughes or Aimee Hughes (JTWROS).  The mailing address listed for the account was 10612 Calaveras, Waco, Texas 76708.  As of May 31, 2019, the account balance was $300,885.72.

20.     ChangePoint accepted patients who had private insurance coverage or who paid cash for services.  ChangePoint did not accept Medicare or Medicaid patients.

21. Through its investigation, the Government learned that, since the beginning of 2015, ChangePoint billed private insurance claims using Strayhan's National Provider Identifier ("NPI") for services that Strayhan did not provide. Although licensed professional counselors ("LPCs") and other counseling professionals working for ChangePoint had their own NPI numbers, Changepoint used Strayhan's NPI to submit claims for their services.

22. According to interviews with numerous counselors who were employed by ChangePoint, Strayhan was not present at the practice from 2015 until the fall of 2018. Beginning in the fall of 2018, Strayhan began to conduct patient visits at ChangePoint one day per week, usually on Thursdays. Strayhan provided medication management sessions. LPCs and other counselors provided therapy sessions which would typically last between 30 minutes and one hour.

**FACTS DEVELOPED THROUGH THE INVESTIGATION**

23. Strayhan owned and operated a behavioral health clinic known as Serendipity Wellness in Texarkana, Texas. He also provided medical services at East Texas Border Health Clinic, which was located near

Marshall, Texas. At all times relevant to this investigation, Strayhan resided in Texarkana, Texas.

24. ChangePoint was a mental health counseling provider located at 11803 Classic Lane, Forney, Texas 75126. ChangePoint was owned and operated by Jason Hughes. ChangePoint's website features various counselors and therapists. However, it does not feature Strayhan.

25. ChangePoint is 170 miles from Texarkana, Texas and approximately two hours and forty minutes by car.

26. Beginning sometime in or around January 2015, ChangePoint began to submit the majority of its medical claims to various health care benefit programs using Strayhan's NPI.

27. According to interviews of ChangePoint patients and staff, Strayhan was not present at the ChangePoint facility and had not been observed conducting any counseling or medical treatments during 2015, 2016, or 2017. He began to appear at ChangePoint sometime in the fall of 2018. Since that time, Strayhan has only been observed in the ChangePoint facility on Thursdays and occasionally on Wednesdays.

28. In 2016, employee M.B. was hired as a full-time counselor at ChangePoint. She worked five days per week. M.B. described Strayhan as

9

an "elusive figure." M.B. indicated that she had heard of Strayhan and had been told that he would be working at the practice, but she never met him nor saw him in the office until sometime in the fall of 2018. Even after that, Strayhan did not begin meeting with patients until later in the year. Strayhan did not provide counseling sessions for patients. Instead, he provided medication management sessions, which usually lasted only 15 to 30 minutes per session. M.B. stated that Strayhan was only in the office on Thursdays. M.B. did not know that Strayhan's NPI was used to submit claims for services she provided.

29. Employee C.S. was hired as a full-time counselor at ChangePoint in August 2018. C.S. had heard of Strayhan and had met him a few months after she began working at ChangePoint. C.S. said that Strayhan was only present in the office on Thursdays from late morning through the afternoon.

30. Employee H.C. was hired as a full-time counselor at ChangePoint in October 2018. H.C. also described Strayhan as an "elusive figure." She indicated that she only saw him in the office on Thursday but did not see him on a consistent week-to-week basis. H.C. became concerned when she learned that all claims were submitted under Strayhan's NPI. When she asked employee R.W., the office manager, about the issue, R.W. told H.C.

that it was none of her concern, but the reason "they billed under Strayhan was because it was more money." Based on H.C.'s recollection, Strayhan was present in the office on Thursdays, but he did not have any patient visits until January 2019.

31. Employee R.W. was hired as a full-time office manager at ChangePoint in November 2013. R.W. said Strayhan was in the office on Thursdays for half days at first, but eventually stayed for the entire day. R.W. indicated that she would prefer to see Strayhan in the office more since there are many patients on his waitlist.

32. Employee C.T. was hired as a full-time counselor at ChangePoint in July 2018. C.T. met Strayhan for the first time in the fall of 2018. C.T. observed Strayhan in the office for patient visits on Thursdays and occasionally on Wednesdays. To C.T.'s knowledge, her NPI was never used to submit claims for services which she provided. Instead, she believed that Strayhan's NPI was used to submit claims for her services. In February 2019, ChangePoint changed to a new billing system, DrChrono. In a staff meeting, prior to the launch of the new system, Hughes advised the staff that they were to change the billing provider from their name to Strayhan's name.

C.T. was unaware that there were any potential problems associated with Hughes's instruction and did as she was told.

33. Employee E.B. joined ChangePoint in 2013 as an independent contractor/counselor who rented office space from ChangePoint. In 2014, E.B. was approached several times by Hughes, who asked her to become a full-time employee of ChangePoint. According to Hughes, this would allow E.B. to submit claims for her patient visits using Strayhan's NPI, which "bills" insurance providers at a higher rate and reimburses at about twice the amount that an LPC is typically reimbursed by insurance providers. According to Hughes, E.B. would be provided 70% of the increased payment and the remaining 30% would go to ChangePoint. E.B. declined Hughes's offer. To E.B.'s knowledge, there were several full-time counselors at ChangePoint who were providing services which were submitted using Strayhan's NPI.

34. A review of medical billing records from various health care benefit programs confirmed that Strayhan's NPI number had been used for the majority of ChangePoint's medical claims since early 2015. According to a medical billing review, Blue Cross Blue Shield of Texas ("BCBST") was

billed for a majority of ChangePoint's medical claims.[1] The numbers below represent ChangePoint's billing totals to BCBST for the time period of January 2015 – September 2018:

- Claims submitted by ChangePoint
    - Total claims: 12,224
    - Total billed amount: $2,456,735.00
    - Total paid amount: $902,917.00
- Claims submitted by ChangePoint using Strayhan's NPI
    - Claims: 8,194 (approximately 67% of total claims)
    - Billed amount: $1,491,986 (approximately 61% of total billed amount)
    - Paid amount: $588,895.00 (approximately 65% of total paid amount)

35.    The numbers below represent ChangePoint's billing totals to BCBST for the time period of October 2018 – March 2019:

- Claims by ChangePoint
    - Total claims: 3,325
    - Total billed amount: $641,249.00

---

[1] BCBST is a "health care benefit program" as defined by 18 U.S.C. § 24(b).

        o       Total paid amount: $240,318.00

- Claims submitted by ChangePoint using Strayhan's NPI (excluding Thursday claims)

        o       Claims: 2,528 (approximately 76% of total claims)

        o       Billed amount: $460,435 (approximately 72% of total billed amount)

        o       Paid amount: $166,276 (approximately 69% of total paid amount)

36. According to several employees at ChangePoint, Strayhan did not see patients for counseling/therapy sessions but only for medication management sessions. Therefore, claims for counseling/therapy sessions should not have been submitted using Strayhan's NPI.

37. According to BCBST personnel, the provider who actually treats the patient should designate their NPI as the billing provider. If a medical doctor is present in the office but does not treat the patient, the medical doctor may not use their NPI to submit the claim for service unless the claim is modified. The same is true for medication management sessions; if a nurse practitioner treats a patient, a medical doctor may not submit a claim for the service using their NPI unless the claim is modified.

38. Texas Work Force records show that Strayhan received payments from East Texas Border Health, a health care provider in the Texarkana and Atlanta, Texas area, beginning in the first quarter of 2018, and continuing until the first quarter of 2019.

39. On June 14, 2019, BCBST finalized the total overpayment related to ChangePoint's claims submitted using Strayhan's NPI. The total overpayment was $476,496.34 for the time period of January 1, 2015 to April 30, 2019. The overpayment amount accounts for the difference in payment BCBST paid ChangePoint for the services of a psychiatrist, Strayhan, and the services of counselors or nurse practitioners.

40. BCBST advised that had they known the claims that were billed to them by ChangePoint were being misrepresented, the claims would been denied due to a violation of the terms of the contract between BCBST and ChangePoint.

41. Based on information and belief, from in and around January 2015 to in and around April 2019, ChangePoint submitted claims to various health care benefit programs using Strayhan's NPI, rather than the NPI of the actual service provider. This arrangement allowed ChangePoint to be paid an average of 100% to 120% more per service.

## COUNT I
## INJUNCTIVE RELIEF
## 18 U.S.C. § 1345

42. The United States incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

43. Defendants knowingly and willfully conspired and agreed to execute, or attempted to execute, a scheme or artifice to defraud any health care benefit program, or obtained, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.

44. Defendants' scheme to defraud violates 18 U.S.C. § 1347, which is included in the definition of "Federal health care offenses" under 18 U.S.C. § 24(a)(1). Defendants' coordination of these efforts with others, known and unknown, constituted a conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

45. As a result of Defendants' knowing and willful conduct, BCBST and other health care benefit programs have paid hundreds of thousands of dollars in reimbursements for services predicated upon false and fraudulent pretenses, representations, and promises.

46. Defendants continue to operate, directly and indirectly. Jason Hughes and ChangePoint have engaged in a pattern and practice of healthcare fraud in the past and continue to do so now.

47. Defendants remain operational and there is no indication any of them intending to cease operations.

48. Defendants' ongoing scheme poses the threat of causing a continuing and substantial injury to the victims.

49. Accordingly, Defendants' ongoing illegal conduct should be enjoined, on both a preliminary and permanent basis, pursuant to 18 U.S.C. § 1345.

50. Moreover, the United States brings this action to enjoin Defendants from alienating or disposing of property obtained as a result of federal health care offenses, whether that property be traceable to such violations or be property of equivalent value. The United States seeks to immediately restrain $476,496.34, which is the overpayment amount Defendants received from BCBST between January 1, 2015 and April 30, 2019.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States of America demands judgment in its favor and against all Defendants and entry of a preliminary and permanent injunction against Defendants as follows:

(a) enjoining Defendants and their officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with any of them, from submitting any claims to BCBST for any services of any kind;

(b) enjoining Defendants and their officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with any of them, from alienating or disposing of any property obtained as a result of the federal health care offenses or which is traceable to such violations or property of equivalent value, to wit $476,496.34;

(c) requiring, commencing 14 days after entry of the injunction, Defendants to submit to the United States a list of all patients for whom a claim was submitted to BCBST between January 1, 2015 and April 30, 2019 using Strayhan's NPI when Strayhan did not in fact provide the service. The list shall include claim number,

    patient's name, patient's date of birth, date of service, Current Procedural Terminology (CPT) code submitted, billed amount, paid amount, name and NPI of billing provider and service provider, and name of actual service provider;

(d) enjoining Defendant Robert Clayton Strayhan from allowing any healthcare provider to use his NPI for health care services that Strayhan did not provide; and

(e) any additional and further relief as the interests of justice require.

            Respectfully submitted,

            JOSEPH D. BROWN
            UNITED STATES ATTORNEY

            */s/   Robert Austin Wells*
            ROBERT AUSTIN WELLS
            Assistant United States Attorney
            Texas State Bar No. 24033327
            110 N. College, Suite 700
            Tyler, Texas 75702
            Tel:   (903) 590-1400
            Fax:   (903) 590-1437
            Email: robert.wells3@usdoj.gov